IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EMMANUEL JOSEPH,

                Plaintiff,             Case No. 11 C 402

        v.                   Hon. Harry D. Leinenweber

SASAFRASNET, LLC, a Wisconsin
Limited Liability Company,

                Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on remand from the Seventh Circuit. In light of the Seventh Circuit's opinion, the Court directed the parties to submit briefs on the outstanding issues with respect to Plaintiff's Motion for a Preliminary Injunction. The Court will now review those issues and re-examine its prior denial of Plaintiff's Motion.

## I.  BACKGROUND

Plaintiff Emmanuel Joseph (hereinafter, the "Plaintiff" or "Joseph") operates a British Petroleum ("BP") service station franchise in Chicago, Illinois. Defendant Sasafrasnet, LLC is an authorized distributor of BP products and Plaintiff's franchisor.

On April 27, 2006, Plaintiff entered into a Dealer Lease and Supply Agreement (the "DLSA") with BP Products North America. Pursuant to the DLSA, Plaintiff, as a franchisee, agreed to lease a service station located in Chicago, Illinois and sell "BP's

trademarked motor fuels, motor oils, and other products to the motoring public." Pl.'s Compl.; Ex. 2 at 2; (Dkt. 1-2; Page ID #15). Plaintiff also agreed to pay $14,334.00 in monthly rent. Pl.'s Compl.; Ex. 2 at 2 (Dkt. 1-2; Page ID #16).

At some point after Plaintiff entered into the DLSA, BP sold the service station to Defendant Sasafrasnet, LLC, (hereinafter, the "Defendant" or "Sasafrasnet") who in turn, assumed all of BP's rights and responsibilities as Plaintiff's franchisor. Sasafrasnet asserts that since it assumed the role of Plaintiff's franchisor, Plaintiff "has been consistently problematic and in breach of his contractual obligations." Memo. In Opp. to Mot. for TRO, Ex. 1 at 2 (Dkt. 7-1; Page ID# 122). Because of Plaintiff's persistent problems, in November 2010, Sasafrasnet sent Plaintiff notice of its intent to terminate the franchise. Specifically, Sasafrasnet cited Plaintiffs repeated violations with respect to the payment and performance requirements of the DLSA as reasons for the termination.

Pursuant to the DLSA, Plaintiff is, among things, required to:

> establish an account with a financial
> institution, on terms acceptable to
> [Sasafrasnet], that provides [electronic funds
> transfer ("EFT")] services and to authorize
> [Sasafrasnet] to initiate certain transfers of
> funds between that account and designated
> accounts of [Sasafrasnet] for payment of any
> and all amounts due to [Sasafrasnet] under
> [the DLSA]

Pl.'s Compl.; Ex. 3 at 4; (Dkt. 1-3; Page ID # 18).

- 2 -

The DLSA also obligates Plaintiff to manage and operate the station in satisfactory working order to maintain BP's reputation, brand, and image. It requires Plaintiff to meet certain standards with respect to the appearance of the service station and obligates Plaintiff to display the BP uniform, sign, and advertising materials. In order to ensure compliance with the aforementioned requirements, the DLSA mandates that Plaintiff participate in a Mystery Shopper inspection program where Plaintiff must achieve certain scores and promptly correct any deficiencies documented in the Mystery Shopper reports. The DLSA states "[f]ailure to do so may result in termination of this Agreement [the DLSA]." Pl.'s Compl.; Ex. 3 at 4; [Dkt. 1-3; Page ID #20].

The DLSA also contains a provision which authorizes the franchisor to terminate the franchise if Plaintiff "fail[s] . . . to make payment according to BP's EFT policy causing a draft to be dishonored for nonsufficient or uncollected funds" more than once within a twelve-month period. *Id.* at 2. [Dkt. 1-3; Page ID# 18].

In June 2009, shortly after Sasafrasnet became Plaintiff's franchisor, an EFT from Plaintiff's account for a fuel delivery was returned for non-sufficient funds ("NSF"). Over the next few weeks, an additional three EFTs were returned for the same reason.

In March 2010, another three EFTs from Plaintiff's account were returned NSF. At this time, Sasafrasnet notified Plaintiff

that he was now required to prepay for his fuel. Plaintiff agreed to this.

However, the prepayment method was not ideal for Sasafrasnet. Thus, after Plaintiff made a series of timely prepayment, on May 7, 2010, Sasafrasnet sent Plaintiff a letter indicating that Sasafrasnet would allow Plaintiff to resume paying for deliveries by EFT, but informed him that if he incurred future NSFs, Plaintiff would have to pay a $2,500 penalty. The letter also notified Plaintiff that Sasafrasnet would require Plaintiff to prepay again if he had two more NSFs. Plaintiff agreed to the terms and signed the letter.

From May 2010 to June 2010 Plaintiff made EFT payments without a NSF. Nevertheless, a future issue with respect to Plaintiff's payment ensued. On July 8, 2010, Plaintiff notified Sasafrasnet he was changing banks. At this time, Plaintiff directed Sasafrasnet to withdraw future EFTs from his new bank account. However, Plaintiff failed to provide Sasafrasnet advanced notice of the account change. Indeed, Plaintiff had an EFT payment due on the July 8, 2010, (the same day he notified Sasafrasnet of the change) which Sasafrasnet debited from the old account. Not surprisingly, this was returned for NSF.

On July 12, 2010, Sasafrasnet again debited the old account which was returned NSF. Sasafrasnet has admitted that this NSF was the result of Sasafrasnet "incorrectly submit[ing]" the EFT to

Plaintiff's old account, implying that this NSF was its fault, not Plaintiffs. Def. Sasafrasnet, LLC Memo. of Law in Opp. to Pl.'s Emergency Mot. for Temp. Restraining Order and Preliminary Injunction at 6, n. 3 [Dkt. 7 Page ID #111]. Because of its error, on July 15, 2010, Sasafrasnet tried to withdraw from the new account. However, this EFT was also returned NSF. (Plaintiff claims that the reason for the July 15, 2010 NSF was partially because Sasafrasnet had collected credit card receipts on Plaintiff's behalf and failed to deposit these funds into Plaintiffs' new bank account, and partially because Plaintiff failed to transfer funds from the old account to the new account.)

In November 2010, Sasafrasnet gave Plaintiff the requisite notice that Sasafrasnet would be terminating Plaintiff's franchise. In this notice, Sasafrasnet cited the July 2010 NSFs and Plaintiff's failing Mystery Shopper inspection scores as the bases for the termination.

Before the termination became effective, Plaintiff filed the instant suit under the Petroleum Marketing Practices Act, ("PMPA") seeking a temporary restraining order and/or other preliminary relief to prevent Sasafrasnet from terminating the franchise.

On April 28, 2011, this Court held a hearing to determine whether to grant Plaintiff's motion for preliminary relief. After finding Plaintiff's late payments were a *per se* reasonable basis for Sasafrasnet to terminate the franchise under the PMPA, the

Court determined that Plaintiff could not satisfy the standard set by the PMPA for preliminary relief, and therefore denied his Motion.

On May 6, 2011, Plaintiff filed a Notice of Appeal to the Seventh Circuit challenging the Court's denial. (At this time, Plaintiff also filed a Motion to Stay enforcement of this Court's Order pending his appeal, which the Court granted.) On August 17, 2012, the Seventh Circuit reversed and remanded the case back to this Court for further proceedings. In its opinion, it instructed the Court to address explicitly the term "failure" set out in 15 U.S.C. § 2801(13) to determine whether the July 2010 NSFs were within Plaintiff's reasonable control. It further directed the Court to "consider whether the July 2010 NSFs that were within Mr. Joseph's reasonable control were only technical or unimportant to the franchise relationship." *Joseph v. Sasafrasnet, LLC*, 689 F.3d 683, 692-93 (7th Cir. 2012).

The Court instructed both parties to submit briefs on the remaining issues, which both parties filed timely. Accordingly, the Court now will consider those issues that remain to determine whether to grant Plaintiff's Motion for Preliminary Relief under the PMPA.

## II.  **LEGAL STANDARD**

The PMPA "governs franchise arrangements for the sale, consignment, or distribution of motor fuel "in commerce."" *Dersch*

*Energies, Inc. v. Shell Oil Co.*, 314 F.3d 846, 855 (7th Cir. 2002) citing *Beachler v. Amoco Oil, Co.*, 112 F.3d 902, 904 (7th Cir. 1997). Congress enacted the PMPA to protect franchisees from the inherent disparity in bargaining power that exists between major oil company franchisors and franchisees in the petroleum industry. *Beck Oil, Co. v. Texaco Ref. & Mktg., Inc.*, 25 F.3d 559, 561 (7th Cir. 1994). The PMPA is intended to protect franchisees by providing "a single, uniform set of rules governing the termination of petroleum franchises and nonrenewal of petroleum franchise relationships." *Dersch Energies, Inc.*, 314 F.3d at 855-56. If a franchisor terminates a franchise in violation of the PMPA, it provides a franchisee the ability to maintain a civil action against the franchisor under 15 U.S.C. § 2805(a) and/or (b). Section 2805(b) governs actions requesting equitable relief. It instructs a court to grant a preliminary injunction if:

> (A)   the franchisee shows –
>
> > (I)    the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and
> >
> > (ii)   there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and
>
> (B)   the court determines that, on balance, the hardships imposed on the franchisor by the issuance of such preliminary injunction will be less than the hardship which would be imposed upon such franchisee if such

preliminary injunctive relief were not
granted.

15 U.S.C. § 2805 (b)(2).

Unlike the requirements for a preliminary injunction under
Federal Rule of Civil Procedure 65, "the PMPA requires only that a
franchisee show a reasonable chance of success on the merits," not
"a strong or reasonable likelihood of success on the merits."
*Joseph v. Sasafrasnet*, 689 F.3d 683, 689 (7th Cir. 2012) citing
*Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1216 (7th Cir. 1984).

## III. **DISCUSSION**

At the outset, the Court notes that Plaintiff previously
satisfied Section 2805(b)(2)(A), and Section 2805(b)(2)(B). Here,
it is undisputed that Sasafrasnet seeks to terminate the franchise
and that the balance of hardships weighs in Plaintiff's favor, as
he stands to lose the $400,000 he spent in purchasing the business
if the termination is upheld. *See* [Dkt. 16 at 3]. Thus, the only
inquiry the Court will undertake is whether Plaintiff can satisfy
the burden of demonstrating "there is a 'reasonable chance' that
[Sasafrasnet] will be unable to prove that the termination was
permissible under the Act." *Sasafrasnet*, 689 F.3d at 691.

Section 2802(b)(2)(C) authorizes a franchisor to terminate a
franchisee if an event occurs which is relevant to the franchise
relationship. 15 U.S.C. § 2802(b)(2)(C). Section 2802(c) sets
forth a list of twelve non-exclusive events that constitute "an
event which is relevant to the franchise relationship and as a

- 8 -

result of which termination of the franchise . . . is reasonable." 15 U.S.C. § 2802 (b)(2)(C). One of the twelve events listed is a "failure by the franchisee to pay the franchisor in a timely manner when due all sums to which the franchisor is legally entitled." 15 U.S.C. § 2802 (c)(8). While the PMPA does not define the term "failure" expressly, it does exclude from the definition "(A) any failure which is only technical or unimportant to the franchise relationship, [or] (B) any failure for a cause beyond the reasonable control of the franchisee . . ." 15 U.S.C. § 2801(13).

Plaintiff argues that the July 2010 NSFs were merely technical failures beyond his reasonable control. Sasafrasnet disagrees.

## A. 15 U.S.C. § 2801(13)(B) Beyond Reasonable Control

In the Seventh Circuit's opinion, it directed the Court to "determine which of the July 2010 NSFs were within Mr. Joseph's [Plaintiff's] reasonable control." *Sasafrasnet*, 689 F.3d at 692. It specifically noted that Plaintiff appeared "to concede that the first NSF was within his reasonable control," and the "second NSF in July appear[ed] to be attributable to Sasafrasnet." *Id.* at 692-93. The Seventh Circuit then instructed this Court to consider whether the final July NSF was in Plaintiff's reasonable control.

Plaintiff now contends that all three July 2010 NSFs were out of his control. With respect to the first NSF, Plaintiff claims he "was unaware that the switch in bank accounts would require a 4-day advance notice of the change." Pl.'s Supp. Memo. in Supp. of its

Mot. for a TRO at 5.  Plaintiff contends the second NSF in July was out of his control because Sasafrasnet mistakenly tried to withdraw funds from his old account.  Finally, Plaintiff argues that the final NSF in July 2010 was out of his control because Sasafrasnet failed to deposit Plaintiff's credit card receipts in the appropriate account.

Sasafrasnet disagrees.  It argues that the first NSF in July was within Plaintiff's control because Plaintiff admitted that "he failed to give Sasafrasnet adequate notice of his change of bank accounts."  Def.'s Br. Regarding Issues on Remand at 11. Sasafrasnet claims that the second NSF was within Plaintiff's control for the same reason, and argues that the third NSF in July was in Plaintiff's control because it "was the direct result of [][Plaintiff's] mismanagement of the transition between bank accounts."  *Id.*  With respect to the third NSF Sasafranet points out that in Plaintiff's Complaint, Plaintiff admitted that he "neglected to transfer the remaining funds in the old account to the new one[.]"  *Id.* citing Compl. ¶ 23.

When determining whether the first and second NSFs in July were within Plaintiff's reasonable control, the Court finds the April 28, 2011 hearing transcripts informative.  At the hearing, Plaintiff testified regarding the NSFs at issue.

    Q:  Okay.  I'm not clear.  Explain that to me
        again.  You wanted to change banks?
    A:  I wanted to change banks.

- 10 -

```
Q:   What did you do about that?
A:   What we did was I - I was not in town.  I
     called my manager and told him, call
     Sasafrasnet because we need to change banks.
     And I believe that there was some EFTs coming
     through at the time - if I'm not mistaken,
     there was some EFT coming through on the old
     bank account.  And he called Sasafrasnet to
     let them know that, you know, we're changing
     bank accounts.

Q:   Okay.
A:   And -

Q:   What happened then?
A:   What happened was they were already hitting
     the old account.  And I guess it was a mutual
     mistake, you know, that maybe we should have
     told them a little earlier, I don't know, but
     I wasn't here.  He handled it.  He called
     them, let them know that there's going to be a
     new bank account, we need a voided check.  And
     they hit - what happened - actually what
     happened was they hit the old account when
     they were supposed to hit the new account, and
     that caused a problem, that caused an NSF.
```

Tr. of Proceedings at 6-7; [Dkt. 22; Page ID #231-232].

In light of this testimony, the Court refuses to conclude that the first NSF in July was out of Plaintiff's control.  The above colloquy illustrates that Plaintiff recognized he should have given Sasafrasnet advance notice of his change in financial institutions, particularly because he knew an EFT was pending.  Moreover, to the extent that Plaintiff is attempting to argue that this was out of his control because he was out of town, the Court is not persuaded. In *Potter v. Ashland Oil, Inc.*, 905 F.2d 1538 (6th Cir. 1990), the Sixth Circuit affirmed a district court's denial of a preliminary injunction, rejecting the franchisee's argument that his failure to

pay his franchisor timely was beyond his control because the payments were the responsibility of his employees. *Id.* The Sixth Circuit reasoned that it was not unreasonable for the franchisor to terminate the franchise when the franchisee failed to exercise his control effectively. *Id.* The Court finds the same true here and as such, finds the first NSF was within Plaintiff's reasonable control.

With respect to the second and third NSFs in July, the Court finds the testimony of Plaintiff's manager, George Urbieta persuasive. During his testimony the Court asked Mr. Urbieta to clarify a few issues with respect to the July 2010 NSFs.

> Q:   So one of them – the first one was your fault,
>      the other two was their fault in a sense?
> A:   Yes.  I would say the third one would be both
>      of us because of the simple fact that I wasn't
>      able to grab the money from the old account to
>      put into the new account.

Tr. of Proceedings at 58-59; [Dkt. 22; Page ID# 283-284].

In light of this testimony, as well as the testimony from Sasafrasnet's representative which revealed that Plaintiff only was forced to pay $5,000 in fees for the July 2010 NSFs ($2,500 for each NSF pursuant to the parties' May 2010 Agreement), the Court finds Sasafrasnet to be the responsible party for the second July NSF.

With respect to the third NSF in July, the Court finds that while both parties could be partially to blame, this NSF was not beyond Plaintiff's reasonable control. As support, the Court finds

- 12 -

*Moody v. Amoco Oil Company,* 734 F.2d 1200 (7th Cir. 1984) instructive    In *Moody*, the Seventh Circuit found that a franchisee's failure to cure bad checks was not "beyond the debtors' reasonable control" as the franchisee tried to argue. *Id.* at 1217.   While the franchisee argued that their failure to cure the checks was in part because of an agreement the franchisor made with them to continue their fuel supply, the Seventh Circuit disagreed and held that the "debtors had no reasonable basis to believe that their duty to cure within five days had been tolled." *Id.*

The Court finds this analysis applicable to the instant case. First, the Court finds that Plaintiff's failure to recognize the exact steps needed to ensure a smooth transition when changing financial institutions is something within Plaintiff's control. Plaintiff could have (and should have) had discussions with either or both of his financial institutions to inquire about what he needed to do to ensure there were adequate funds in the new account at the time of the third NSF.   This seems particularly logical given that the terms of the DLSA state Plaintiff was required to give the bank authorization for Sasafrasnet to make EFT withdraws, and given that EFT withdrawals only occur after Plaintiff places a fuel order.

Furthermore, the Court finds the Third Circuit's interpretation of 15 U.S.C. § 2802 (13)(B) in *Sun Refining and*

*Marketing Co. v. Rago*, 741 F.2d 670 (3d Cir. 1984) informative. In that case, the Third Circuit rejected a franchisee's argument that a store closing for over one week was beyond his control. *Id.* Relying on the Seventh Circuit's opinion in *Brach v. Amoco Oil, Co.*, 677 F.2d 1213 (7th Cir. 1982), the Third Circuit found that since the franchisee "failed to put forth any reasons . . . which would excuse the admitted closing of his service station[,]" the franchisor's decision to terminate the franchise was reasonable. *Id.* at 674. In making its decision, the Third Circuit noted that Section 2802(13) was intended to provide a franchisee a "legislated excuse for nonperformance" in a limited number of unforeseen circumstances such as a "flood or some other cause beyond his or her reasonable control." *Id.* at 673 citing *Brach v. Amoco Oil Co.*, 677 F.2d at 1224, n. 16. Like the Third Circuit in *Rago*, the Court does not find Plaintiff's failure to fund his new account adequately analogous to those circumstances contemplated in *Brach*.

Plaintiff cites *Beachler v. Smith Oil Co. of Kankakee*, 112 F.3d 902 (7th Cir. 1997) as support for the argument that the July NSFs did not constitute a "failure" as defined by the PMPA. However, *Beachler* involved a question of whether a franchisor's actions effectively terminated a franchise, not whether a franchisee's alleged failure was within his/her reasonable control. *See id.* at 905-07 (holding "the assignment of a franchise by a refiner to a distributor generally will not implicate the PMPA

unless the assignment either breaches an essential component of the statutory franchise or violates state law."). Plaintiff's reliance on *Brach v. Amoco Oil Co.*, 677 F.2d 1213 is similarly misplaced. In *Brach*, the Seventh Circuit considered whether the nonrenewal of a franchise due to a franchisee's default on a real estate contract was permissible under the PMPA. In *Brach*, the Court noted that while the franchisee's actions were similar to those cited in Section 2802(c)(8) (failure to pay in a timely manner), because that provision is "intended to cover the potential problem of repeated lateness or arrearage in rent or motor fuel payments," the lower court needed to determine whether the default on the real estate contract was material to the franchise relationship. *Id.* at 1221.

Here, Plaintiff's failures involve repeated late payments and arrearages in motor fuel payments, exactly the type of problem the court in *Brach* noted that Section 2802(c)(8) is intended to cover. Moreover, Plaintiff is incorrect in his assertion that if the Court determines that one of the NSFs was within Plaintiff's control that the Court must also engage in an inquiry to determine whether the facts in this case are of a material significance to the franchise relationship to justify the termination. That inquiry would only be necessary if Sasafrasnet's only justification for termination was not of those listed in Section 2802(c). *See Sasafrasnet*, 689 F.3d at 690-92, (noting that while the Sixth Circuit requires

courts to "scrutinize the reasonableness of terminations even when an event enumerated in § 2802(c) has occurred" the Seventh Circuit holds that "the occurrence of an event listed in § 2802(c), justifies as a matter of law, a franchisor's decision to terminate a franchise under § 2802(b)(2)(C).").  Therefore, this Court need not examine the material significance that the NSFs within Plaintiff's control had on the franchise relationship.  Instead, the only other additional inquiry the Court must undertake is "whether the July 2010 NSFs that were within Mr. Joseph's reasonable control were only technical or unimportant" and therefore excluded from being considered "failures" pursuant to 15 U.S.C. § 2801(13)(A).  *Sasafrasnet*, 689 F.3d at 692-93.

## B.  15 U.S.C. § 2801(13)(A) Technical or Unimportant Failure

Plaintiff contends that Sasafrasnet's attempt to terminate the franchise is in violation of the PMPA because the July 2010 NSFs were technical or unimportant.  Plaintiff claims this is evidenced by Sasafrasnet's failure to make timely credit card deposits on Plaintiff's behalf over the course of the parties' franchise relationship.  Plaintiff specifically cites an incident that occurred on May 7, 2009 where Sasafrasnet notified Plaintiff that it debited Plaintiff's account instead of crediting it for credit card receipts Sasafrasnet received on May 4 and 5 for Plaintiff.  Plaintiff claims a similar incident occurred on April 5, 2012 and on September 21, 2012.  Plaintiff argues that the untimely credit

card deposits by Sasafrasnet illustrate that the July 2010 NSFs were only technical failures.

Sasafrasnet claims that Plaintiff cannot escape responsibility for the July 2010 NSFs on the ground that these failures were only technical in nature or unimportant to the franchise relationship. Sasafrasnet contends that the substantial amount of money at issue with respect to the NSF transactions as well as Plaintiff's extensive history of making delinquent payments establish that these failures were "vital" to the franchise relationship. Def.'s Br. Regarding Issues on Remand at 13.

When determining whether Plaintiff's NSF's were technical or unimportant to the franchise relationship the Court finds *Hinkleman v. Shell Oil Co.*, 962 F.2d 372 (4th Cir. 1992) persuasive. In *Hinkleman*, the franchisor terminated a franchise with the plaintiff due to the plaintiff's failure to provide timely payments. *Id.* at 374-76. In *Hinkleman*, the plaintiff tendered at least three NSF payments to his franchisor within a one-year time period. *Id.* at 374-75. One of the NSF transactions was due to the plaintiff closing his bank account. *Id.* While the plaintiff argued that the franchisor's termination was a violation of the PMPA because the plaintiff's failure to pay the funds was an "unimportant" failure pursuant to the PMPA, the Fourth Circuit disagreed, noting that the plaintiff's failures "constituted significant breaches of an important part of the franchise agreement." *Id.* at 376l. It

reasoned that the number of occurrences that the plaintiff failed to pay on time combined with the substantial amount of money of each delinquent payment demonstrated that the failure could not be construed to be "unimportant."  *Id.*

The Court finds the facts in *Hinkleman* similar to the facts here.  Like the plaintiff in *Hinkleman*, it is undisputed that over the course of the parties franchise relationship, Plaintiff had a habit of making late payments because of insufficient funds.  *See* Ct.'s Findings of Fact and Conclusions of Law at 2, [Dkt. 16. Page ID# 203].  Moreover, similar to the plaintiff in *Hinkleman*, in this case the amount of each of Plaintiff's delinquent payments was substantial.  Sasafrasnet states that the invoice amount for each of the three July 2010 NSFs was over $22,000.  Accordingly, the Court finds that "[t]his is not a case of constructive payment, where all but an insignificant amount had been rendered to the franchisor," or a case where the failure to make timely payments was unimportant.  *Id.* at 377.  While Plaintiff attempts to argue that his late payments were unimportant since Sasafrasnet also was guilty of making untimely deposits for Plaintiff, Plaintiff fails to offer any support which convinces the Court that this makes Plaintiff's late payments unimportant to the franchise relationship.  Therefore, the Court refuses to find that Plaintiff's delinquent payments of over $50,000 in only one month were merely "unimportant" or "technical" failures.

Thus, the Court finds Plaintiff fails to satisfy the burden of establishing that "there is a reasonable chance that [Sasafrasnet] will be unable to prove that the termination was permissible under the Act" due to Plaintiff's repeated late payments and NSFs. *Sasafrasnet*, 689 F.3d at 691 citing *Khorenian v. Union Oil Co. of Cal.*, 761 F.2d 533, 535-36 (9th Cir. 1985) (quoting *Moody*, 734 F.2d at 1216).  As a result, the Court finds it unnecessary to also examine whether Sasafrasnet's other cited reason for termination, the failing Mystery Shopper scores, would also be permissible under the PMPA.

### IV.  CONCLUSION

For the reasons stated herein, Plaintiff's Motion for a Preliminary Injunction is denied.

**IT IS SO ORDERED.**

_____
        Harry D. Leinenweber, Judge
        United States District Court

**DATE:** 12/28/2012

- 19 -